ELISHA S. CONVERSE *vs.* GEORGE H. HOOD.
SAME *vs.* BOSTON RUBBER COMPANY & others.

Suffolk.   March 25, 26, 1889. — June 20, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Corporation — Contract — Trade Name — Fraudulent Representations — Rights of Minority Stockholders — Equity — Specific Performance.*

A bill in equity, filed in 1888, alleged that the plaintiff was a stockholder in a corporation chartered in 1853 and engaged in making a certain line of goods; that for thirty years it had been known to the trade by a trade name differing from its corporate name; that a corporation was organized in 1878 with a corporate name the same as the trade name of the senior corporation, and had been engaged in making a distinct line of the same goods; that both had their principal places of business in the same city; that after the junior corporation was organized the plaintiff objected, both to it and to the defendant who was its treasurer and general manager, to its using its corporate name; that the defendant represented to the plaintiff, and promised and agreed, that it did not intend and was not going to make goods that would interfere with those of the senior corporation; that afterwards the defendant informed the plaintiff that the junior corporation intended to increase its capital stock, and asked him to subscribe, assuring him, as inducement thereto, that it was not going to interfere with the goods or business of the senior corporation; that these representations were fraudulently made to induce the plaintiff and the senior corporation to cease opposition to the junior corporation's use of its name, and to induce him to subscribe; that he was thus induced to become a stockholder in the junior corporation, which was preparing to make the same goods as the senior corporation, and use its name in so doing; that the defendant controlled the stock of the junior corporation, as well as the votes of its directors; that a meeting of the junior corporation had been called at which the defendant

intended to vote that it go into the new line of business, and that his vote would govern the result of the meeting; and that its carrying on such new line in its name would be an unlawful use and infringement of the senior corporation's trade name and trade-mark, and greatly lessen the value of the stock of both; and prayed that the defendant might be enjoined from doing anything to depreciate the value of the plaintiff's stock in the senior corporation, and particularly from voting at any meeting of the junior corporation that it engage in such line of business, and for general relief. *Held,* on demurrer, that the bill could not be maintained.

Another bill brought by the same plaintiff against the junior corporation and its four directors, including the same defendant, contained in substance the same allegations, except that the representations and promises were alleged to have been made by that defendant and the junior corporation to that plaintiff and the senior corporation, and also alleged that the use by the junior corporation of its corporate name in the same line of business as that of the senior would be an infringement and a fraudulent use of the trade name and trade-mark of that corporation, and cause great injury to its business and reputation as well as litigation that would be injurious to its interests; and prayed that the junior corporation be enjoined from using its name in the proposed line of business, and from doing certain acts preparatory to entering upon it, and that the directors be enjoined from aiding that corporation so to do by voting therefor at a corporate meeting, or in any way. *Held,* on demurrer, that this bill also could not be maintained.

W. ALLEN, J. These cases are bills in equity, filed in August, 1888, to which the defendants demurred, and which have been argued and may be considered together. The bills are brought by the same plaintiff, and allege that he is a stockholder in the Boston Rubber Shoe Company, a corporation established by special act in 1853, and engaged in the manufacture of rubber boots and shoes; that for thirty years the corporation has been known in the trade by the name of the Boston Rubber Company; that the plaintiff is also a stockholder in the Boston Rubber Company, a corporation established in 1878, and which has been engaged in the manufacture of rubber goods other than boots and shoes, and which is a separate and distinct business from that of the manufacture of rubber boots and shoes; that both corporations have their principal places of business in Boston; that the Boston Rubber Company is preparing to manufacture boots and shoes, and to carry on that business, and use its name in the business, and stamp its name upon boots and shoes manufactured by it. The bills also allege, that George H. Hood is the treasurer and general manager, and holds the controlling interest in the stock, of the Boston Rubber Company, and controls the votes of the directors of that company;

that a meeting of the corporation has been called, at which Hood intends to vote that the company go into the business of manufacturing rubber boots and shoes, and that his vote will determine the action of the meeting; that carrying on that business by the company, in its name, will be an unlawful use of the trade name and trade-mark of the Boston Rubber Shoe Company, and an infringement thereof, and will greatly diminish the value of the stock of both corporations.

The first bill is against Hood alone, and alleges that, after the Boston Rubber Company was organized, the plaintiff objected to Hood and to the company to the use by it of the corporate name Boston Rubber Company; that Hood represented and stated to the plaintiff, and promised and agreed, that the company had no intention of making, and would not make, any goods that would interfere with the business of the Boston Rubber Shoe Company, and was not going to make boots and shoes; that such representation was falsely and fraudulently made to induce the plaintiff and the Boston Rubber Shoe Company to cease opposition to the use by the Boston Rubber Company of its name; that afterwards Hood made known to the plaintiff that the Boston Rubber Company intended to increase its capital stock, and asked the plaintiff to subscribe thereto, and, to induce the plaintiff to do so, assured him that the company was not going to make any goods that would interfere with the business of the Boston Rubber Shoe Company, and would not engage in the business of making boots and shoes; and that this representation was falsely and fraudulently made to induce the plaintiff and the Boston Rubber Shoe Company to cease opposition to the use by the Boston Rubber Company of its name, and to induce the plaintiff to subscribe to the stock of the company, and that the plaintiff was induced thereby to become a stockholder in the Boston Rubber Company. The prayer of this bill is that Hood may be enjoined from doing anything to injure the value of the plaintiff's stock in the Boston Rubber Shoe Company, and particularly from voting at any meeting of the stockholders of the Boston Rubber Company that it engage in the business of making boots and shoes; and for general relief.

The other bill is against the Boston Rubber Company and its four directors, one of whom is the same George H. Hood, and

contains substantially the same allegations as are contained in the first bill, except that the representations and promises are alleged to have been made by Hood and the Boston Rubber Company to the plaintiff and the Boston Rubber Shoe Company. This bill also alleges that the use of the name Boston Rubber Company in the business of manufacturing boots and shoes will be an infringement and a fraudulent use of the trade name and trade-mark of the Boston Rubber Shoe Company, and cause great injury to its business and reputation, and will also cause litigation that will be injurious to the interests of the Boston Rubber Company. The prayer of the bill is that the Boston Rubber Company be enjoined from using its name in the business of manufacturing rubber boots and shoes, and from doing certain acts preparatory to that business; and that the directors of the company be enjoined from aiding the company so to do by voting therefor at a stockholders' meeting, or in any way. There are many other particular allegations in both bills which do not seem to be material.

In regard to the first bill, it is obvious that it cannot be maintained on account of a threatened infringement by one corporation of the trade name or trade-mark of another. Neither the corporate rights of either corporation, nor the collective rights of its stockholders, can be asserted in this suit by one individual against another. The bill cannot be maintained unless it shows a duty owed by the defendant to the plaintiff, which can be enforced in equity. Such duty cannot arise from the relation of the parties as members or officers of corporations, but must be found, if at all, in the representations or promises alleged to have been made by the defendant to the plaintiff. The first of these is so clearly insufficient to give any right of action, for the reason that it is not alleged that anything was done in consequence of the representation or promise, that other objections need not be considered. If a promise is alleged, it was without consideration; if false representations are alleged, they induced to nothing. The other allegation is of false representations, and is in these words: "and thereupon this defendant, for the purpose of inducing your orator to subscribe for and take stock in defendant's said company, again represented to your orator, and assured him in explicit terms, that said junior company was not

going to make any goods that would interfere with the aforesaid business of said Boston Rubber Shoe Company, and particularly said defendant assured your orator that his said company would not engage in the business of making boots and shoes." These are allegations that the representations were false and fraudulent, and that the plaintiff was induced by them to take one hundred and fifty shares in the stock of the Boston Rubber Company.

Without considering whether an action of deceit would lie upon the facts alleged in the bill, the question presented is whether a person, who has been induced to become a stockholder in a corporation by the assurance of a stockholder that the company would not engage in a particular business, can thereby acquire a right in the vote of such stockholders which will be specifically enforced in equity. No contract is alleged the specific performance of which can be enforced, or the violation of which can be enjoined, and fraudulent representations as to the future action of the corporation, by which the plaintiff was induced to subscribe to its stock, cannot give him a right to control the vote of the defendant as a stockholder.

The second bill is brought in behalf of the plaintiff as a stockholder in the Boston Rubber Company, and of all other stockholders who are not defendants, and is brought against that company and its directors. It is, therefore, a bill brought under the collective right of stockholders to restrain the corporation and its directors from doing an act not authorized by its charter, or fraudulent and injurious to its stockholders. But it is a bill of multifarious aspect, and individual rights of the plaintiff were also relied on in argument.

The act sought to be prevented is the undertaking by the defendant corporation of the business of manufacturing rubber boots and shoes. It is not alleged that the corporation has not a right, under its charter, to carry on that business. It is alleged, but not shown, that the intended acts and doings of the corporation will be in violation of the law of this State and of the United States, and beyond the lawful power of the corporation. The alleged injury to the corporation and to its stockholders is, that the proposed action of the defendant corporation will lead it into vexatious and expensive litigation with the Boston Rubber Shoe Company, in defending suits that will be

brought against it by that company to protect itself from what it is alleged will be a fraudulent and unlawful use of its trade name in the business. The bill is brought to restrain stockholders from voting for, and the corporation from carrying on, a business authorized by its charter, on the allegations that by so doing it will infringe the right of another corporation, and expose itself to litigation therefor.

Whether the corporation will run the risk of such litigation is plainly a matter for the majority, and not for the minority, of its stockholders to determine. There is no other allegation of injury to the collective rights of stockholders from the proposed action of the corporation, although it is suggested that the new business is hazardous and will not prove successful. The allegation that the proposed action of the defendant corporation will be wrongful and injurious to the Boston Rubber Shoe Company, and will diminish the value of the plaintiff's stock in the company, in which he is a large shareholder, shows no right in the plaintiff against the defendants, and would not had it been shown that that corporation and its directors were not willing and able to protect its rights.

It is argued that the bill shows that the defendant corporation made a contract with the plaintiff that it would not make boots and shoes, which will be specifically enforced, or a violation of which will be enjoined, at the suit of the plaintiff. There are two parts of the bill which look this way, though neither suggests any right except one individual to the plaintiff, and not common to him and other stockholders. The bill alleges that, on the organization of the defendant company, the plaintiff and the Boston Rubber Shoe Company earnestly remonstrated with the defendant company and Hood, and strenuously objected and protested against the use by the defendant company of the name Boston Rubber Company, and tried to persuade them not to use the name; that the defendants then represented to the plaintiff and the Boston Rubber Shoe Company, and expressly promised and agreed, that the defendant company was not going to make boots and shoes, and that the plaintiff and the Boston Rubber Shoe Company, relying upon such representations, " merely protested." . This does not show any consideration for a promise, nor any promise which the plaintiff could enforce, had it been

upon consideration. The other promise relied on to show an individual right in the plaintiff is contained in the representations before set out from the first bill, except that they are alleged to have been made by Hood and the defendant company. There is an allegation that the plaintiff, believing the representations, and relying on the representation and promise of Hood and the defendant company that it would not go into the business of making rubber boots and shoes, took and paid for stock in the company.

The intention of the bill obviously is to charge fraudulent representations and deceit, and not a contract. No contract is alleged or promise set out; the allegations of the falseness of the representations and of fraud are full. The word "promise" is used only in connection with the word "representations" in alleging that the defendant was thereby induced to take the stock. If the words could, under any circumstances, be held to import a contract, such a meaning cannot be given to them as used in the bill. As a contract, it concerned the relations between the plaintiff and the corporation under the contract of subscription to the stock, and was merged in that. The relative rights of the corporation, and of the plaintiff as a stockholder, are found, expressed or implied, in the contract of subscription. Apart from the consideration that that contract is in writing, and cannot be varied by prior oral agreements or promises between the parties, such a contract by a corporation with a particular subscriber to the stock, limiting the rights of the corporation and of other stockholders, is not one which can be specifically enforced in equity. A corporation is a trustee for its stockholders, and holds its franchise for their benefit, and it would be against first principles to enforce specifically a promise made by its agent soliciting subscriptions to its stock, that its franchise shall be exercised in a particular manner for the benefit of one person in consideration that he will become a stockholder.

We think that the bill shows no right in the plaintiff to relief in equity, either against the defendant corporation or the other defendants. *Bills dismissed.*

*A. A. Ranney & W. S. Rogers,* for the plaintiff.

*G. Putnam & W. L. Putnam,* for the defendants.