BANK OF BROOKINGS Respondent, v. THE AURORA GRAIN COMPANY et al., Appellants.

(181 N. W. 909.)

(File No. 4698.   Opinion filed March 10, 1921.   Rehearing granted May 11, 1921.)

1.  Conversion—Mortgaged Grain Sold to Elevator Company, Resale by Latter, Proceeds Delivered to Federal Trustee in Bankruptcy, Notification by Mortgagee Not to Pay Proceeds to Mortgagor, Summary Federal Order As Basis of Delivery—Whether Conversion by Elevator Company, Insufficiency of Evidence—Jurisdiction of Bankruptcy Court Re Title To, Attachment of, Property.

   Where mortgaged grain was sold by mortgagor to an elevator company, and after being stored was resold by the latter, the mortgagee properly claiming a mortgage lien on the proceeds and having notified the elevator company not to pay the proceeds to mortgagor; the latter on voluntary petition having been adjudged a bankrupt under the Federal law, a trustee in bankruptcy having been duly appointed and qualified, whereupon the referee in bankruptcy made and issued a summary order adjudging and requiring the elevator company to deliver to the trustee said proceeds for distribution in bankruptcy, which was done prior to trial of the present action in which mortgagee sued the elevator company in conversion therefor, held, that the evidence is insufficient to sustain a verdict or judgment for plaintiff; that at time of trial said proceeds were not in possession or control of defendant or its agents, but of the Federal trustee by virtue of said order. So held, where the elevator company asserted no adverse claim to said proceeds; that (following Mueller v. Nugent, 184 U. S. 1,) under said facts, where the third party asserts no adverse claim, bankruptcy court may summarily order such assets to be delivered to its trustee, the filing of bankruptcy petition is a notice to

world of jurisdiction of bankruptcy court, that filing of and adjudication upon the petition in effect places an attachment on such property and assets in possession of bankrupt or his agent; (following Whitney v. Wenman, 198 U. S. 539) that court has jurisdiction to determine all controversies concerning bankrupt's property in whosesoever hands same may be, and concerning nature, character and extent of all liens thereon.

**2.    Same—Mortgagees' Lien, Transfer of to Proceeds by Mortgagor's Consent, Bankrupt's Property Subject to Lien, Title in, Trustee.**

Assuming without deciding, that the lien of plaintiff's mortgage was terminated by sale and delivery of the grain to elevator company by consent of mortgagor and mortgagee, and that the lien by such consent was transferred and attached to the money in elevator company's hands, held, that the bankrupt's property, subject to the lien, was in hands of a third person at time petition in bankruptcy was filed; and under bankruptcy law title to bankrupt's property vested in the trustee subject to the lien; neither the elevator company nor any other person having challenged or proposed to contest rights of mortgagee as lien holder.

**3.    Bankruptcy—Property Held By Bankrupt's Agent, Bailee Asserting Antedated Claim, Plenary Action by Trustee Necessary— Property So Held Without Adverse Claim, Summary Proceedings Without Suit By Trustee The Remedy—Surrender To Trustee by Non-claiming Party As Defense To Mortgagee's Claim.**

Two classes of cases arise under Federal Bankruptcy Act of 1898; the first, where bankrupt's property is held by a third person with claim of adverse title thereto based upon a transfer antedating bankruptcy; in which case a plenary action must be brought against the party in possession by trustee in bankruptcy to adjudicate the question, claim or title. The second, where the third party, or an agent of the bankrupt or an officer of a bankrupt corporation holds and refuses to deliver it to trustee, but makes no claim of such adverse title; in which case delivery of the property to trustee may be enforced by summary proceedings without formal suit. And held, it appearing that the defendant grain company made no claim to the proceeds of sold grain adversely to plaintiff mortgagee or to bankruptcy trustee, and not having refused to deliver it to him, referee in bankruptcy had jurisdiction by summary proceedings to compel delivery of the property to trustee; and surrender of such proceeds under a valid order of bankruptcy court protects grain company from any liability to plaintiff.

**4.    Conversion—Intentional Conversion of Property, Or Assuming**

**Dominion Over For Self-Benefit, Or Injury Or Destruction, Necessary To Sustain Conversion Suit.**

The general rule pertaining to conversion of property, with few exceptions, not applicable here, is that to sustain wrongful conversion defendant must have intentionally converted property to his use, or have assumed or exercised dominion over it to obtain some benefit to himself, or have injured or destroyed or have done some wrongful act to it occasioning it to be lost to owner or person entitled thereto under owner.

5. **Same—Grain Buyers in Wrongful Possession With Mortgagee's Consent, Are Bailee-warehousemen, Not Trustees, Likewise Proceeds of Resale—Likewise Re Mortgagee's Lien in Hands of Bankruptcy Trustee. ·**

Where grain buyers purchased from owner mortgagor and received into their elevator some grain covered by mortgage, with consent of mortgagee claiming a lien thereon, they were bailees, in the nature of warehousemen, and having thereafter sold the grain, held the proceeds in that capacity, and not as trustees of mortgagor or mortgagee; and the money proceeds represented the grain so delivered, and belonged to mortgagor subject to the mortgage lien. And mortgagee's lien is as valid and effective with said proceeds in the hands of a trustee in bankruptcy to whom the proceeds were delivered under a bankruptcy order, as they would have been in the hands of grain buyers.

6. **Same—Rule Re Bailee's Delivery to Non-Owner, Exception to Where Bailee Delivers to Law Officer Under Process—Property in · Custodia Legis—Bailee's Non-Right to Question Legality of Process—Mortgagee's Right to Assert Claim Against Bankruptcy Trustee.**

To the general rule that it is a conversion by a bailee to deliver goods to one not the owner, an exception exists where bailee delivers it to an officer of the law by virtue of process of law, such delivery not constituting conversion. Therefore, held, that where grain buyers deliver proceeds of their resale of grain to their vendor's trustee in bankruptcy, making no adverse claim thereto, such proceeds so delivered must be treated as being in custody of law from and after adjudication in bankruptcy and appointment of federal bankruptcy trustee, and where delivery was so made to trustee, the grain dealers were not guilty of conversion as against a mortgagee. Such bailee cannot question legality of such process. The trustee was thereafter entitled to possession of proceeds for administration of bankrupt's estate, in which proceeding the moragagee should and could have whatever rights he possessed determined.

7. **Same—Grain Buyers, Mixing Grain and Selling Same in Elevator**

38—Vol. 43, S. D.

Business,   Whether   Conversion   Re   Consenting   Mortgagee—
Bailee vs. Trustee—Statute.

Where grain elevator dealers purchased grain delivered to
them, subject to a mortgage, and with mortgagee's consent
resold it and held the proceeds, mortgagee not waiving its
lien on proceeds, which proceeds the grain dealers held as
bailee in lieu of the grain, such transaction did not constitute
the dealers a trustee of the mortgagee, under Sec. 989, Code
1919; that trust relationship can only be established by volun-
tary agreement of parties or by operation and construction of
law under Secs. 1193-4, Sec. 1193 providing that one who
wrongfully detains a thing is an involuntary trustee thereof
for owner's benefit, and Sec. 1194 providing that one who
gains a thing by fraud. etc., violation of trust or other wrong-
ful act, is, unless he has some other and better right thereto,
an involuntary trustee for benefit of the person who would
otherwise have had it.   So held, where record does not disclose
that grain dealers made such trust agreement to hold the prop-
erty in question, nor were guilty of any fraudulent or tortious
or other wrongful conduct concerning it, nor were at or prior
to time they delivered same to bankruptcy trustee wrongfully
detaining same from any person, their possession having been
gained only with consent of both mortgagor and mortgagee in
ordinary business course of buying and selling grain through
their warehouse.   Mortgagee was not injured thereby, its lien
remaining effective against such trustee.

Whiting and Gates, J. J., dissenting.

Appeal from Circuit Court, Brookings County.   Hon. WIL-
LIAM N. SKINNER, Judge.

Action by the Bank of Brookings against the Aurora Grain
Company, a corporation, and S. L. Potter and and others, co-part-
ners, as Potter, Garrick & Potter, for conversion of personalty
and to recover from defendants the value of plaintiff's interest
as mortgagee in certain grain sold and delivered by mortgagor
to defendant grain company.   From a judgment for plaintiff,
and from an order denying a new trial, defendants appeal.   Re-
versed.

*Waddel & Dougherty*, for Appellants.

*Hall & Purdy*, for Respondent.

(1)·  To point one of the opinion, Appellants cited: Conwell
v. Jager, 21 Indiana Appeal, 110, 51 N. E. 733; Collier on Bank-
ruptcy, 11th Ed. p. 459, 540-50, 1111; Loveland on Bankruptcy,
3rd Ed., p. 85, 440-1; Mueller v. Nugent, 184 U. S. 1; 22 Sup.

Ct. 269; Acme Harvester Co., v. Beekman Lumber Co., 222 U. S. 300, 307; 56 L. ed. 208, 213; 23 Sup. Ct. 96; Whitney v. Wenman, 198 U. S. 553, 49 L. ed. 1161, 25.

Respondent submitted that: The property (grain) or the proceeds thereof were not in custody of bankruptcy court or Brightwell at time of adjudication of bankruptcy, or at time of making said order April 7, 1919, said order being void, referee having no jurisdiction, and cited: In re Walsh Brothers, 163 Fed. 352; That conversion is not excused by subsequent taking of property from wrongdoer by virtue of legal process, unless it be further shown that owner or person entitled to possession has received it, or the proceeds of any disposition which may have been made of it; and cited: 38 Cyc. p. 2061; Erie Preserving Company v. Witherspoon (Mich.) 13 N. W. 781. That bankruptcy court was without jurisdiction to determine adverse claims to property *not in the possession of the assignee in bankruptcy* (*trustee*) by summary proceedings, whether absolute title or only a lien was asserted; And cited: In re Rathman, 183 Fed. 913.

(3) To point three, Respondent cited: Mueller v. Nugent, 184 U. S. 1, 46 Law Ed. 405.

McCOY, J. This action in conversion was commenced about the 1st day of April, 1919, by plaintiff to recover from defendants the value of plaintiff's interest as a mortgagee in certain grain sold and delivered by the mortgagor to defendants' elevator about the 1st day of September, 1918. From verdict and judgment in favor of plaintiff, defendants appeal.

[1] Appellants have duly presented the question of the sufficiency of the evidence to sustain the verdict. It appears from the record that the mortgagor sold and delivered grain to defendants at their elevator, and that the proceeds of said grain amounted to $2,568.95; that respondent claimed a chattel mortgage lien on said grain amounting to $1,467.85 with interest thereon; that about the time said grain was delivered to defendants respondent notified them not to pay the proceeds thereof to the mortgagor; that thereafter, in the United States District Court on petition of said mortgagor, he was adjudged and declared to be a bankrupt on the 23d day of September, 1918, and that on about the 25th day of October, 1918, one Rausch was duly appointed and qualified as the trustee in bankruptcy of the estate of said mortgagor;

that thereafter on the 7th day of April, 1919, the referee in bankruptcy made and issued a summary order in said United States District Court adjudging and requiring that appellants turn over to said trustee in bankruptcy the said $2,568.95, to be distributed by him under the orders and direction of the said United States District Court; and that thereafter on the 22d day of 'April, 1919, and prior to the trial of this action, and pursuant to said order of the said referee in bankruptcy, the defendants paid and turned over to the said trustee in bankruptcy the said $2,568.95. We are of the opinion that the evidence was wholly insufficient to sustain the verdict or judgment. At the time this action was tried, the proceeds of said morgaged grain was not in the possession or under the control of defendants, but was then in the possession and under the control of an officer of the United States District Court by virtue of an adjudicated order in an action having jurisdiction of the subject-matter of this suit. In the case of Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, it was held that where property of a bankrupt had come into the hands of a third party, before the filing of the petition in bankruptcy, where the third party asserted no adverse claim, the bankruptcy court might summarily order the property or assets to be delivered to the trustee in bankruptcy; that the filing of the petition is notice to the world of the jurisdiction of the bankruptcy court; that if the third party sets up an adverse claim the bankruptcy court has jurisdiction to ascertain the basis for such adverse claim; that the filing of the petition has the legal effect of placing an attachment on the property and assets of the bankrupt in the possession of the bankrupt or his agent. In Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157, it was held that the bankruptcy court has jurisdiction to determine all controversies concerning the property of the bankrupt, in whosesoever hands the same may be, and concerning the nature, character, and extent of all liens thereon.

[2] Assuming that the lien of the mortgage was terminated by the sale and delivery of the grain to the defendant company by consent of both the mortgagor and mortgagee, and that the lien by consent of both was transferred and attached to the money in the hands of the defendant grain company, we have a case in which property belonging to the bankrupt, but subject to a lien,

was in the hands of a third person, at the time the petition in bankruptcy was filed. Under the Bankruptcy Law (U. S. Comp. St. §§ 9585-9656), title to all property of the bankrupt vested in the trustee, subject to the lien. In this case neither the defendant nor any other person has challenged or has proposed to contest the rights of the plaintiff as lienholder.

In Brandenburg Bankruptcy (4th Ed.) § 1168, it is said:

"Where a third person holds property at the time of the bankruptcy merely as agent or bailee of the bankrupt, and asserts no adverse claim thereto, the bankruptcy court, which includes the referee, may by summary proceedings compel the delivery thereof to the trustee in bankruptcy; but where he acquires the possession prior to the bankruptcy, and claims the right to hold the property as against the bankrupt or the trustee, making a real, though fraudulent and voidable, adverse claim, and does not consent to the jurisdiction, he is entitled to have his rights determined in a plenary suit, in the state or district court."
—citing Babbit v. Dutcher, 216 U. S. 102, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969, where it is said:

"There are two classes of cases arising under the act of 1898 and controlled by different principles. The first class is where there is a claim of adverse title to property of the bankrupt, based upon a transfer antedating the bankruptcy. The other class is where there is no claim of adverse title based on any transfer prior to the bankruptcy, but where the property is in the physical possession of a third party or of an agent of the bankrupt, or of an officer of a bankrupt corporation, who refuses to deliver it to the trustee in bankruptcy. In the former class of cases a plenary suit must be brought, either at law or in equity, by the trustee, in which the adverse claim to title can be tried and adjudicated. In the latter class it is not necessary to bring a plenary suit, but the bankruptcy court may act summarily and may make an order in a summary proceeding of the delivery of the property to the trustee, without the formality of a formal litigation."

[3, 4] In the first class of cases, an adverse title to the property exists and is asserted; in the second class, the party in possession making no adverse claim, refuses to deliver it to the trustee. In the first class, a plenary action must be brought by the trustee to adjudicate the question, claim, or title; in the latter

class, delivery of the property to the trustee may be enforced by summary proceedings without formal suit. In the case at bar, the defendant grain company is not making, and has never made, a claim adverse to the plaintiff or to the trustee, to the property in its hands. Neither has it, for any reason, refused to deliver it to the trustee in bankruptcy. Therefore it seems entirely clear that the referee had jurisdiction by summary proceedings, to compel the delivery of the property to the trustee, and that the defendant grain company was not guilty of a conversion of the plaintiff's interest in the property, when it delivered it to the trustee, in compliance with the order of the referee.

If the view of our dissenting associates be correct, it becomes the duty of a person holding property of a bankrupt to assert and litigate at his peril the rights of a third person and those of the trustee in bankruptcy, even though he himself makes no claim, adverse or otherwise, to any title or interest in the property. We cannot conceive this to be the law. A question of adverse claim would have arisen had defendant company, being in possession, asserted in itself some interest adverse to the right of the bankrupt or the trustee in the bankruptcy, to possession of the property. Such was the case in First National Bank v. Title & Trust Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051. In that case the bankruptcy court undertook to adjudicate in summary proceedings adverse claims actually asserted by the person in possession. It was held that this could not be done, and perhaps that such matter could not be so litigated in a summary proceeding, even by consent of the "proposed defendant." But neither the Bankruptcy Law nor any decision we have been able to find places any inhibition, jurisdictional or otherwise, upon the right of the trustee to claim possession of the property by summary proceedings, when the person in possession makes no claim to any title, lien, or interest in such property. Nor have we found any decision which holds that a person in possession is bound at his peril to assert adverse claims of third persons against a trustee in bankruptcy who is seeking possession by summary proceedings. Had the property in this case been in possession of the plaintiff bank, summary proceedings would not lie to compel surrender of the property to the trustee, if the lien of the mortgage were asserted adversely. In such case plenary suit would be necessary. But where

the person in possession himself neither has nor asserts any adverse claim, as in this case, the order of the referee is valid, and the surrender of the property under a valid order of the bankruptcy court should be held to protect the defendant from any liability to the plaintiff.

[4, 5] The fundamental elements of conversion are lacking. The general rule, with few exceptions not applicable to the facts of this case, seems to be that to sustain wrongful conversion the defendant must be shown to have intentionally converted the property to his own use, or to have assumed or exercised dominion over the same for the purpose of obtaining some benefit to himself, or to have injured or destroyed the same or to have done some wrongful act that occasioned such property to be lost to the owner, or to the person entitled thereto under the owner. The appellants came lawfully into the possession of the proceeds of said grain by and with the consent of the owner, and also by and with the consent of respondent who claims a lien thereon. The appellants were bailees, in the nature of warehousemen, and held the proceds of the grain in question in that capacity. The money proceeds represented the grain that had been delivered to appellants' warehouse. Such money proceeds belonged to the mortgagor, Brightwell, subject to the respondent's mortgage. While said proceeds were so in the hands of appellants, Brightwell, upon his own voluntary petition, was adjudged and declared to be a bankrupt, in bankruptcy proceedings then pending in the United States court. Under the authority of Mueller v. Nugent, supra, the adjudication upon said petition in bankruptcy had the effect of placing an attachment upon all the property of said mortgagor, in whosoever hands the same might be, and also thereby invested the trustee in said bankruptcy proceeding with all title, right, and interest in and to the property of said bankrupt, including the proceeds of said grain, subject to respondent's mortgage. The appellants claimed no right, title, or interest in said proceeds adverse to the trustee in bankruptcy, nor adverse to the bankrupt, nor adverse to the respondent. Under these circumstances, the trustee in bankruptcy, armed with the summary order of the referee, demanded possession of said proceds from appellants, and appellants in accordance with the command of said order and the demand of the trustee, and not otherwise, delivered

said proceeds to said trustee. Appellants cannot be said to have voluntarily surrendered possession of said proceeds to the trustee. Clegg v. Boston Warehouse, 149 Mass. 454, 21 N. E. 877, 14 Am. St. Rep. 436. Respondent's mortgage lien is just as valid and effective with the said proceeds in the hands of the trustee in bankruptcy, as it would have been with the said proceeds in the hands of appellants. It therefore necessarily follows that the act of the appellants in delivering said proceeds to a trustee in bankruptcy did not constitute a conversion and in no manner injured or damaged the respondent, as the said act in no manner occasioned any loss of any right of respondent.

We are of the opinion that the appellants were justified, under the circumstances of this case, in not delivering said proceeds or any part thereof to respondent at the time respondent demanded possession immediately prior to the beginning of this action, as appellants then had notice of and were bound by said bankruptcy proceedings; that such refusal under such circumstances did not constitute conversion. We are also of the view that the evidence on the trial failed to show any conversion of the proceeds of said grain by appellants. Bolling v. Kirby, 90 Ala. 215, 7 South, 914, 24 Am. St. Rep. 789, and note on pages 804-808; Dent v. Chiles, 5 Stew. & P. (Ala.) 383, 26 Am. Dec. 360.

[6] There is also another and further reason wherein the evidence fails to show a conversion. The facts of this case are within the exception to the general rule that it is a conversion by a bailee to deliver goods to one not the owner; the exception being that where a bailee delivers the subject-matter of the conversion to an officer of the law, by virtue of process of law, such a delivery will not constitute a conversion. Under the circumstances of this case, where the appellants made no adverse claim to the said proceeds as against the trustee in bankruptcy, the said proceeds must be treated as being in the custody of the law, from and after the appointment of the trustee, and where the delivery was made to the trustee by virtue of process of law requiring such delivery, the appellants could not be held to be guilty of conversion. Stiles v. Davis, 1 Black, 101, 17 L. Ed. 33, and cases cited in Rose's note to this case, page 115; Clegg v. Boston Storage Warehouse, 149 Mass. 456, 21 N. E. 878, 14 Am. St. Rep. 437; Cooley v. Transfer Co. 53 Minn. 327, 55 N. W. 142, 39

Am. St. Rep. 609; Kohn v. Ry. Co., 37 S. C. 1, 16 S. E. 377, 24 L. R. A. _101, 34 Am. St. Rep. 728; Ohio & M. Ry. Co. v. Yohe, 51 Ind. 181, 19 Am. Rep. 727. In Stiles v. Davis and O. & M. Ry. Co. v. Yohe, supra, it is held that the bailee cannot question the legality of the process of law under which he is required to make the delivery of the property into the custody of the law. Many of the cases cited held that the property must be considered as being in the custody of the law although the actual possession still remained in the hands of the bailee.  Therefore we are of the view that in this case the proceeds of said grain must be treated as being in the custody of the law from and after the said adjudication in bankruptcy, and that the trustee was thereafter entitled to the possession thereof for the purpose of the proper and legal administration of the said bankrupt's estate in said bankruptcy proceeding wherein the respondent should and could have whatever rights he possessed under his mortgage lien determined.

[7]  The fallacy of the dissenting opinion consists in the fact that, under the circumstances of this case, appellants did not hold the said proceeds of grain as a trustee, but held the same as a gratuitious bailee.  It cannot truthfully be said that appellants converted the grain by mixing it with other grain and selling the same in the usual course of their elevator business, as it conclusively appears from the record that respondent consented to such a sale, but under such circumstances as to not waive its mortgage lien on the proceds of such sale which remained in the hands of appellants as a bailee in lieu and in place of the grain.  We are of the opinion that such transaction did not constitute the appellants a trustee of respondent.  Section 989, Code 1919.  The trust relationship can only be established by agreement of the parties, voluntarily entered into, or by operation and construction of law under sections 1193, 1194, Code 1919.  The record does not disclose that appellants ever entered into any such a trust agreement with any one to so hold this property; neither had they been guilty of any fraudulent or tortious or other wrongful conduct in relation thereto; nor were they at or prior to the time they delivered the same to the trustee in bankruptcy wrongfully detaining the same from any person whosoever.  Their possession had been gained only by and with the consent of both the mortgagor and mort-

gagee in the ordinary business course of buying and selling grain through their warehouse. In the case of Threshing Machine Co. v. Calhoun, 37 S. D. 542, 159 N. W. 127, there was an express agreement between all interested parties making a third party a trustee by and with the consent of the trustee. The record in this case discloses no such agreement. Therein lies the reason why the Calhoun Case has no application to the facts of this case. There is no escape from the proposition that appellants did not injure respondent. His lien was just as valuable and effective again the trustee in bankruptcy. He had notice long before he commenced this action that the bankruptcy court had acquired jurisdiction, and right of possession, of the property of the bankrupt mortgagor.

The judgment and order appealed from are reversed.

WHITING and GATES, JJ. (dissenting.)    It stands conceded by the grain company that the grain in question was raised in 1918; that, before any part thereof was delivered to the grain company, plaintiff wrote such company advising it of its mortgage, and directing such company not to sell any grain delivered to it by the mortgagor; that plaintiff directed the grain company to issue storage tickets or sale tickets in the names of both the mortgagor and mortgagee; that the grain company was also, by the cashier of plaintiff's bank and prior to the receipt of any of the grain from the mortgagor, advised of the mortgage and directed not to pay the mortgagor any money therefor; and that the grain company received the grain, mixed it with other grain, and shipped and disposed of it in the regular course of business.

From the above facts it is certain that the grain company assumed one of two positions, and occupied same for the several months after it disposed of this grain and before it paid over the proceeds of same to the trustee in bankruptcy: Either it received the grain and disposed of it in defiance and in denial of plaintiff's rights under its mortgage; or else it received it in full recognition of plaintiff's rights and claims it had made. If it did the first, then a cause of action for conversion immediately arose, against which it has absolutely no defense, it appearing that the mortgage was valid. If it did the second, then it voluntarily assumed the relation of trustee of plaintiff of such portion of the proceeds of said grain as would pay the mortgage indebtedness.

If it wrongfully converted said grain, it cannot be heard in defense to say that the money it received therefor was taken out of its hands by a representative of the mortgagor. If it sold said grain in full recognition of the mortgage and intending to hold the proceds and pay same out in accordance with the rights of the mortgagor and mortgagee—in other words, in compliance with the instructions of the mortgagee—then it became a trustee, just as did Pettigrew in the case of Threshing Machine Co. v. Calhoun, 37 S. D. 542, 159 N. W. 127, and cannot defend on the ground that the trust funds were taken out of its hands as the property of the mortgagor, even upon a valid order of a court, when, if it had disclosed that it was holding part of such funds as trustee for plaintiff, no valid order for the delivery of such part could have issued.

Our colleagues concede that if the grain company, as trustee of this fund, had set up the fact that it was holding a part thereof for plaintiff, the referee in bankruptcy could not, in a summary proceeding, have directed the trustee in bankruptcy to take possession of that part of such fund. Our colleagues are, however, of the opinion that no duty rests upon such a trustee to make such a claim; that, because there was no such duty upon it, it committed no wrong in allowing this fund to be taken from it in the summary proceeding; and that, therefore, it can defend in this action because of the fact that the money was thus taken from it. In apparent justification of their views, they state that they cannot conceive it to be the law that one holding propery of a bankrupt must, at his peril, assert and litigate the right of other persons, where the trustee himself makes no claim to any title or interest in the property. Can it be the law that a trustee owes no duty to protect the rights of his cestui que trust? We understand the rule to be that, where one holds money or other property as a trustee, it is his duty to assert the rights of those for whom he holds the property; or, at least, to turn the fund into court as provided by section 2324, R. C. 1919, to the end that adverse claimants thereto may have their rights adjudicated. There is a rule of law, the soundness and justness of which is so axiomatic that it has been recognized as an axiom in English jurisprudence and so declared by our statute (section 49, R. C. 1919), "No one can take advantage of his own wrong." It was the grain com-

pany's duty as trustee to assert a claim on behalf of the plaintiff, and, having failed to do so, it should not now be allowed to defend against plaintiff upon the ground that the money was taken from it under an order of the federal court, which could not have lawfully been made if it had performed its clear duty. The propositions involved here seem to us to be so elementary as to admit of no possible dispute.