## CATLETT v. STOKES.

As the mortgagee acquires only a lien by a chattel mortgage, and the mortgagor is entitled to possession of the property till breach of condition, the purchaser from the mortgagor acquires the same right of possession, and there is no conversion by reason of the purchase and mingling of the mortgaged wheat by the purchaser with other wheat in his elevator, but only on demand by the mortgagee, after breach of condition, on the purchaser, and his refusal to deliver the grain, or an equal quantity of the same grade, or to pay the mortgagee's claim.

Under Rev. Civ. Code, § 2315, providing that the detriment caused by conversion of personal property shall be presumed to be its value at the time of conversion, with interest, or where the action has been prosecuted with reasonable diligencee, the highest market value of the property between the time of the conversion and the verdict, without interest, at the option of the injured party, proof of value before conversion is not enough.

Under Rev. Civ. Code, § 1287, providing that a written contract may be altered by an executed oral agreement, an oral contract, by which a mortgagee of chattels agrees to accept other property of the mortgagor in lieu of his mortgage lien, having become executed before any demand on, and refusal by, the purchaser of the mortgaged chattels from the mortgagor, inures to his benefit, so as to relieve him from any liability for conversion.

(Opinion filed, December 21, 1906.)

Appeal from Circuit Court, Hamlin County. Hon. GEORGE H. MARQUIS, Judge.

Action by Joseph W. Catlett against William H. Stokes. Judgment for plaintiff. Defendant appeals. Reversed.

*Hanten & Loucks,* for appellant. *Jenkins & Jackson,* for respondent.

CORSON, J. This is an action by the plaintiff, as mortgagee, of certain wheat, to recover the value of portions thereof sold and delivered by the mortgagor to the defendant. Verdict and judgment being in favor of the plaintiff, the defendant has appealed. The facts necessary to a proper understanding of the questions presented on this appeal may be briefly stated as follows: In August, 1892, one Neil Cassidy, being indebted to the plaintiff in the sum of $6,000, executed to him a promissory note for that sum payable January 1, 1893, and which note was subsequently extended to November 1, 1893. In order to secure this note Cassidy mortgaged

to the plaintiff certain growing grain on tracts of land owned by said Cassidy, including 400 acres of grain on a certain section in Hamlin county specified in the mortgage. In the fall of 1893 Cassidy sold and delivered some 700 or 800 bushels of·grain, more or less, to the appellant at his elevator in said county. As to what number of bushesl of such grain was raised on the 400 acres described in the mortgage the evidence was conflicting, but, for the purposes of this decision, it is not necessary to determine this question. The appellant as a defense to the action denies specifically nearly all the allegations of the complaint, and alleges that in the fall of 1893 said Neil Cassidy entered into a contract with the plaintiff by the terms of which the plaintiff agreed to accept certain oats, barley, and horses in lieu of the grain so mortgaged by the plaintiff, and that, in pursuance of said contract, the said·Cassidy did deliver to the said plaintiff oats, barley, and horses to the value of $1,138.35, which was duly accepted by the plaintiff in lieu of said wheat so raised upon said 400 acres described in said mortgage, and indorsed upon the said note in February, 1894, as a credit thereon. No demand was shown by the evidence to have been made upon the defendant by the plaintiff for the said wheat until some time in November, 1895. The case was tried by the court upon the theory that the transfer of the wheat by Cassidy to the defendant in the fall of 1893 and the mingling of the same with the other grain in the elevator constituted a conversion of the grain, and that no demand was, therefore, necessary on the part of the plaintiff.

It is contended by the appellant that (1) no conversion of the wheat was shown prior to plaintiff's demand and appellant's refusal in November, 1895, and that proof of the value of the wheat, therefore, in the fall of 1893 was insufficient upon which to base a verdict in this action. (2) That no action could be maintained by the plaintiff against him for the value of the wheat until a demand had been made for the same and a refusal on the part of the defendant. (3) That by the contract between Cassidy and the defendant in the fall of 1893 plaintiff's lien on the wheat was released and Cassidy was authorized by said contract to sell and dispose of the ·grain to the appellant, who acquired a good title

thereto free and clear of plaintiff's lien. (4) That there was no proof given as to the value of the wheat at the time of the demand and refusal in November, 1895, and consequently there being no proof of the value of the wheat at that time, the plaintiff was not entitled to recover in this action. It is insisted by the respondent in support of the judgment of the trial court that (1) upon the purchase of the wheat by the appellant and the mingling of it with other wheat in his elevator, he thereby converted the same and became liable to the plaintiff for the value of the grain so converted in this action. (2) That no demand by the plaintiff or refusal on the part of the defendant was necessary in order to entitle the plaintiff to recover. (3) That proof of the value of the grain in the fall of 1893, at the time it was delivered to the appellant by Cassidy and mingled with other grain in the elevator, was sufficient to enable the jury to determine the amount of damages plaintiff was entitled to recover. (4) That the alleged agreement made between Cassidy and the plaintiff was an oral agreement which had not been executed at the time the wheat was sold and delivered by Cassidy to the appellant, and hence was not a valid and binding agreement.

We are of the opinion that the appellant is right in his contentions. Under the statutes of this state, the mortgagee only acquires a lien upon personal property mortgaged until foreclosure and sale of the same. The mortgagor remains the legal owner and is entitled to the possession of the property as against the mortgagee until breach of its condition and the property has been demanded of him for the purpose of foreclosure by the mortgagee. The mortgagor's possession of the property being rightful the party purchasing such property from the mortgagor acquires the same right to possession until there has been a breach of the condition of the mortgage and possession thereof duly demanded by the mortgagee. The mere purchase of the property, therefore, by the appellant from Cassidy, the mortgagor, and mingling the same with other grain in his elevator did not constitute a conversion, and, under our statutes, there could be no conversion until the proper demand had been made upon the appellant and a refusal by him to deliver the grain, or the required number of bushels of grain

of the same grade, or payment of the mortgagee's claim. Mr. Jones, in his work on "Chattel Mortgages" (3d Ed. § 491), in speaking upon this subject, uses the following language: "A purchaser of mortgaged property cannot be held liable for a conversion of it without a definite demand by the mortgagee, or a definite refusal to surrender it." And this seems to be the view taken of a statute similar to our own by the Supreme Court of North Dakota in First Nat. Bank of Fargo v. Minneapolis & N. Elevator Co., 11 N. D. 280, 91 N. W. 439. In that case the learned Supreme Court of North Dakota, in discussing the subject, says: "The wheat in question was deposited in the defendant's elevator in the months of October and November, 1896. It was placed there by the owner, and the defendant was, therefore, in lawful possession. The plaintiff, by virtue of its mortgage, was entitled to possession upon demand. A demand followed by a refusal would constitute a conversion. * * * On this state of facts, we are entirely clear that the instruction given was proper, and that the trial court properly refused to instruct the jury that the conversion occurred in the fall of 1896, when the defendant shipped the wheat out of its elevator. As previously stated, the defendant was rightfully in possession of the grain. Its obligations were fixed by the statute, and the fact that it may have mixed the grain with other grain, or that it may have shipped it out, if such was the fact, did not constitute a conversion. Under the law it could fully comply with its obligations to the owner or person entitled to possession by delivering to such person an equal quantity of wheat of like grade, and only upon a demand by the person entitled to possession, and a refusal on its part, would it be liable for a conversion." There being no conversion until demand and refusal, proof of the value of the grain so converted must be given at the time of the conversion, or subsequent thereto, as provided in section 2315, Rev. Civ. Code, which reads as follows: "The detriment caused by the wrongful conversion of personal property is presumed to be (1) the value of the property at the time of the conversion, with interest from that time; or (2) where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at

the option of the injured party; and (3) a fair compensation for the time and money properly expended in pursuit of the property."

We are also of the opinion that the agreement between Cassidy and the plaintiff by which the plaintiff agreed to accept the oats, barley, and horses in lieu of his lien upon the wheat having become an executed contract before any demand and refusal by him to deliver the same was a full and binding agreement and inured to the benefit of the defendant. Section 1287, Rev. Civ. Code, provides as follows: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."

We are clearly of the opinion that the court tried this case upon an erroneous theory in ruling that there was a conversion of the property at the time of its sale by Cassidy to the appellant and mingling the same with other wheat, that the value of the grain might be shown during the fall of 1893 as constituting a measure of damages, that no demand and refusal was necessary to constitute a conversion, that the evidence of the contract entered into by Cassidy with the plaintiff did not constitute a defense and was, therefore, not admissible in this action, and its instructions based upon this theory were erroneous, and for these errors a new trial must be granted.

A number of other questions were discussed by counsel in their briefs; but in the view we have taken of the case, it will not be necessary to consider them in this opinion, as they may not be raised upon another trial.

The judgment of the circuit court and order denying a new trial are reversed.